# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br><br>v.<br><br>**SEA STAR LINE, LLC,**<br>**Defendant.** | **Criminal No. 11-CR-511 (DRD)** |

## SENTENCING MEMORANDUM OF THE UNITED STATES

The United States, by and through the undersigned attorneys, hereby files this Sentencing Memorandum in support of its recommendation that the Court sentence defendant Sea Star Line, LLC ("Sea Star") to pay a criminal fine of $14.2 million, payable in agreed installments, without interest, over five years.

### I. INTRODUCTION

On November 17, 2011, the United States filed an Information charging Sea Star with one count of violating the Sherman Antitrust Act, 15 U.S.C. § 1. The parties have filed a joint motion to request that Sea Star's sentencing be expedited and imposed at the time of Sea Star's plea hearing. Sea Star will waive indictment and plead guilty under Fed. R. Crim. P. 11(c)(1)(C) on December 19, 2011.

The United States submits this memorandum and the Declaration of Dale Zuehls, filed concurrently herewith, to provide additional support for the recommended fine of $14.2 million (including the recommended payment schedule). The United States believes that the Plea Agreement[1] and this memorandum provide information sufficient to allow for the imposition of

---

[1] Courtesy copies of the Plea Agreement and the Plea Agreement Supplement were provided to the Court on November 21, 2011.

1

sentence on the scheduled date of the plea hearing without a presentence investigation, as permitted by Fed. R. Crim. P. 32(c)(1)(A)(ii), but the United States is prepared to submit additional information if requested by the Court. The parties will file the original, executed Plea Agreement and resolution of Sea Star's Manager at the plea hearing. As required by L.Crim.R. 111(b), the United States also will file a Plea Agreement Supplement under seal at the plea hearing.

## II. MATERIAL TERMS OF THE SEA STAR PLEA AGREEMENT

The material terms of the Sea Star Plea Agreement include:

A. Sea Star will waive indictment, waive all rights as enumerated in the Plea Agreement, and plead guilty under Fed. R. Crim. P. 11(c)(1)(C) to a one-count Information charging Sea Star with participating in a combination and conspiracy to suppress and eliminate competition by agreeing to fix rates and surcharges for Puerto Rico freight services, from at least as early as May 2002 until at least April 2008, in violation of 15 U.S.C. § 1. During the relevant period, Sea Star was engaged in the sale of Puerto Rico freight services in the continental United States and Puerto Rico and employed more than 200, but fewer than 1,000, employees in its Puerto Rico business unit. During the relevant period, Sea Star's sales of Puerto Rico freight services may have totaled as much as $1.1 billion.

B. The United States and Sea Star agree that the appropriate sentence in this case is a fine of $14.2 million and a special assessment of $400. The recommended fine will be paid in installments over five years, with no interest, as enumerated in the Plea Agreement. The first installment of $1 million will be paid within 30 days of imposition of sentence, with $1 million due at the one-year anniversary of imposition of sentence ("anniversary"), $2 million due at the second anniversary, $3 million due at the third anniversary, $4 million due at the fourth

anniversary, and $3.2 million due at the fifth anniversary. Sea Star agrees to have its sentence determined under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), although Sea Star understands the Guidelines are advisory, not mandatory.

      C.      The parties agree that the recommended fine of $14.2 million and payment schedule are appropriate, pursuant to U.S.S.G. §8C3.3(a) and (b), due to Sea Star's inability to pay a greater fine without substantially jeopardizing its continued viability, even with the use of a pro rata installment schedule.

      D.      The United States will not seek restitution in this case in light of the civil class action cases that were filed against Sea Star and the settlements that have been reached by Sea Star that will result in the payment of restitution to at least some victims of its criminal conduct.

      E.      The United States agrees, subject to the requirements of the Plea Agreement Supplement filed separately under seal, that it will not bring further criminal charges against Sea Star and related entities for their participation in the Puerto Rico freight services conspiracy.

### III.    UNITED STATES SENTENCING GUIDELINES CALCULATIONS

The following Guidelines calculation assumes sales by Sea Star of Puerto Rico freight services between the continental United States and Puerto Rico during the relevant period that total $1.1 billion:[2]

      A.      Base Fine (20% of $1.1 billion)                      $220 million
              (Volume of Affected Commerce)
              (§§2R1.1(d)(1) & 8C2.4(b))

---

[2] Sea Star's financial statements during the relevant period reflect revenues of approximately $1.1 billion from its freight services. Because the United States and Sea Star entered into fine negotiations only after Sea Star made a *prima facie* showing of its inability to pay a Guidelines fine, the parties did not endeavor to reach agreement on the precise volume of commerce affected by Sea Star's conduct.

B.   Culpability Score

  1. Base (§8C2.5(a))                                                        5

  2. Involvement in or Tolerance of                                          3
     Criminal Activity (§8C2.5(b)(3)(B)(ii))

  3. Prior History (§8C2.5(c))                                               0

  4. Violation of Order (§8C2.5(d))                                          0

  5. Obstruction of Justice (§8C2.5(e))                                      0

  6. Effective Program to Prevent and                                        0
     Detect Violations of Law (§8C2.5(f))

  7. Self-Reporting, Cooperation, and                                       -2
     Acceptance of Responsibility (§8C2.5(g)(2))

C.   Total Culpability Score                                                 6

D.   Minimum and Maximum Multipliers (§8C2.6)                              1.2 – 2.4

E.   Minimum and Maximum Fine Range (§8C2.7)                           $264 - 528 million

F.   Total Fine Based on U.S.S.G. §8C3.3(a) & (b)                          $14.2 million

## IV.   SEA STAR'S ABILITY TO PAY

The investigation by the United States of the Puerto Rico water freight industry became public knowledge in April 2008, when certain carriers including Sea Star were searched, pursuant to warrant, by the Federal Bureau of Investigation. Soon thereafter, Sea Star acknowledged its participation in conduct that violated 15 U.S.C. § 1 and agreed to plead guilty and accept responsibility for that conduct, subject to reaching agreement on a fine that it could afford to pay.

In calculating the potential Guidelines fine in this case, the United States followed the Sentencing Guidelines and determined the fine range that would have applied in this case. Sea Star was then required to make a *prima facie* showing of its inability to pay a Guidelines fine

4

before the United States would agree to consider a resolution pursuant to U.S.S.G. §8C3.3(a)-(b). Sea Star made the requisite showing through an expert witness. As a result, the United States retained Dale Zuehls of Consulting Sciences, Inc., a forensic accounting expert, to conduct an independent analysis.[4] As set forth in Mr. Zuehls's accompanying declaration, the resulting analysis by Mr. Zuehls was very long and exhaustive, taking more than two years and involving numerous meetings and telephone conferences with the company's counsel and experts.

Mr. Zuehls began his analysis by reviewing Sea Star's prior financial information including, among other things, corporate tax returns, statements of cash flows, and forecasts from the prior five years. Mr. Zuehls undertook to assess (1) Sea Star's historic performance, (2) Sea Star's current financial position and balance sheet strength, and (3) the future forecasts and prospects for Sea Star and the industry as a whole.

Although historic performance is typically a good indicator of future performance, Mr. Zuehls has found that historic performance is not, in and of itself, dispositive of future performance. Thus, Mr. Zuehls considers current and future strengths and opportunities for the company tempered by company-specific and industry threats and weaknesses.

After a comprehensive review, and many meetings with Sea Star and its experts, Mr. Zuehls ran his accumulated information through his financial models based upon several iterations of possible future events, pricing components, and other factors. Based on his financial modeling, Mr. Zuehls synthesized his findings with the company's forecasts and "common-sizing" projected financials.

---

[4] Mr. Zuehls is highly experienced in this field and has performed many other ability-to-pay evaluations for the Antitrust Division in investigations of a number of other industries, including Horizon Lines, LLC in this investigation.

As a result of this analysis, Mr. Zuehls concluded that the most Sea Star could afford to pay without substantially jeopardizing its continued viability and its ability to pay restitution was $14.2 million. Mr. Zuehls also recommended an installment payment schedule that is substantially back loaded in order to give the company the flexibility that it needs to deal with other, near-term financial obligations. Sea Star has agreed to pay $14.2 million pursuant to the recommended schedule to resolve its criminal liability.

Although the recommended fine is far less than would result from the application of the Sentencing Guidelines, the United States and Mr. Zuehls went to great lengths to determine the maximum amount that Sea Star could afford to pay and still retain its viability. Sea Star is in tenuous financial condition and has presented evidence of its need to resolve its criminal liability expeditiously in order to remain viable. If the company's sentencing is significantly delayed, the fine imposed is greater than the $14.2 million, or the payment schedule is structured differently than recommended by the parties, Sea Star's viability may be jeopardized.

For all these reasons, the United States respectfully submits that the recommended fine of $14.2 million (including the recommended payment schedule) is reasonable and represents the maximum fine that Sea Star is able to pay.

## V.   PROBATION

The United States recommends that the Court not impose probation on Sea Star because the United States believes that the company will be able to pay in full the recommended fine and because changes to the company's senior management and antitrust compliance program will greatly reduce the risk of recidivism.

## VI.   CONCLUSION

Based on the foregoing, the United States respectfully requests that the Court accept the parties' recommendation of a criminal fine of $14.2 million in this matter, payable as set forth in the Plea Agreement.

Dated: December 6, 2011

    /s/ Brent Snyder
Brent Snyder, PR Attorney #G01209
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue, Room 10-0101
San Francisco, California 94102
Ph.:  (415) 436-6675
Fax:  (415) 436-6687
Email:  brent.snyder@usdoj.gov

Craig Y. Lee, PR Attorney #G01208
Michael Whitlock, PR Attorney #G00801
Jessica Lefort, PR Attorney #01207
Trial Attorneys
United States Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 11300
Washington, D.C. 20530
Tel.: (202) 307-6694
Fax: (202) 514-6525

## CERTIFICATE OF SERVICE

  I hereby certify that on this 6th day of December 2011, the foregoing Sentencing Memorandum by the United States was filed electronically and to the best of my knowledge, information and belief, counsel for defendant Sea Star Lines, LLC will be notified through the Electronic Case Filing System.

DATED: December 6, 2011 at San Francisco, California

                 /s/ Brent Snyder
                 Brent Snyder